634 So.2d 58 (1994)
Jane DOE, et al.
v.
Charles FOTI, et al.
No. 93-C-1337.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1994.
*59 T. Peter Breslin, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for respondents Jane Doe, Wife of/and John Doe, individually and on behalf of their son, Joe Doe.
Richard P. Ieyoub, Robert E. Barkley, Jr., Thomas E. Schwab, Elizabeth H. Mohre, Barkley & Thompson, New Orleans, for relator State of La.
Before KLEES, ARMSTRONG and WALTZER, JJ.
KLEES, Judge.
Plaintiffs filed this lawsuit against the state of Louisiana alleging that the Orleans Parish Juvenile Court Judicial Administrator wrongfully sent plaintiffs' minor son to a juvenile detention center known as Templeman, where he was allegedly raped. The state moved for summary judgment on the grounds that the actions of the judicial administrator were protected by judicial immunity. The motion for summary judgment was denied, and the state applied for writs to this court. On August 2, 1993, we denied writs, stating: "The question of whether the Orleans Parish Juvenile Court Judicial Administrator and her employees were performing a judicial function in this case is a factual matter which requires a trial on the merits." Relator then applied for writs to the Louisiana Supreme Court, which granted the application and remanded the matter to this court "for briefing and opinion." 629 So.2d 407.
We interpret the Supreme Court's order as requiring us to decide, based on the facts we have in the record, whether or not the judicial administrator's office was performing a judicial function in the instant case. Based on those facts, we find that the acts complained of are judicial in character, and, therefore, the state is entitled to judicial immunity.
The record contains a minute entry/judgment from Judge Ernestine Gray of Orleans Parish Juvenile Court. Issued following the detention hearing of plaintiffs' son, the minute entry states that pending adjudication/disposition, the juvenile is to be remanded for "Evaluations at YSC; Trial: 1/15/91." The judicial administrator's office, which is the agency that carries out these orders, sent the plaintiffs' son to Templeman to be held until he could be evaluated at the Youth Study Center, or "YSC". The record does not contain any written documentation evidencing the actions of the judicial administrator's office with regard to this juvenile.
Mary Jordan, the judicial administrator, testified by deposition that it was the common practice of her office to send juveniles who met certain criteria to Templeman to be held pending their evaluation at the much smaller YSC. She testified that she reviews the "hold/release form," which is the minute entry referred to above, and then decides, based on the nature of the charge and the age and physical stature of the particular juvenile, whether that individual should be sent to Templeman or directly to YSC. She would not send a juvenile to Templeman if he was very young, abnormally small in size (as determined by making a telephone call to the lockup officers) or if he had an emotional disability or handicap. She would also not send a juvenile to Templeman if the judge's hold/release form indicated to "hold only at YSC".
Ms. Jordan testified that she handled from five to fifty juvenile cases per day, and that she did not specifically remember having made the decision to send the plaintiffs' son to Templeman. However, she stated that only she or her assistant (if Ms. Jordan herself was out for a day) could have made the decision. More importantly, Ms. Jordan testified that based on the minute entry shown to her and the other relevant information about this particular juvenile, there was *60 nothing to indicate that he should have been sent directly to YSC rather than to Templeman.
Ms. Jordan's testimony is unrebutted in the record. In opposing the motion for summary judgment, plaintiffs rely heavily on a portion of an unsigned "incident report" which is purportedly by Captain Marvin Henry, apparently an administrator at Templeman. This report indicates that plaintiffs' son "should have been detained at the Youth Study Center for evaluation and had been inadvertently transferred to [Templeman] pending court hearing." We agree with relator that this one unexplained comment from an unauthenticated report is insufficient to create an issue of fact in light of the clear testimony of Ms. Jordan. Plaintiffs are required to oppose a motion for summary judgment with appropriate affidavits and/or deposition testimony showing that a genuine issue of fact exists. La.Code Civ.Pro. art. 967. In this case, we find that there is no genuine issue as to the actions of the judicial administrator or her staff, who were clearly performing a judicial function in deciding to send plaintiffs' son to Templeman.
Even if Mrs. Jordan (or her assistant) had erroneously ordered the plaintiffs' son to be housed at Templeman, the decision concerning where to house a juvenile offender pending further judicial proceedings is a judicial function entitled to judicial immunity. A juvenile court judge has absolute immunity under the Federal Civil Rights Statute, 42 U.S.C.A. § 1983, for acts performed in his or her official capacity. See McAfee v. Fifth Circuit Judges, 884 F.2d 221 (5th Cir.1989), cert. denied 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1989). Moreover, this immunity has been extended to include other, nonjudicial persons performing judicial functions. In S.T.J. v. P.M., 556 So.2d 244 (La. App. 2d Cir.1990), the court held that a psychologist appointed by the court to determine the existence of child abuse in a custody dispute was entitled to judicial immunity for alleged misperformance of an evaluation, stating:
Today, even nonjudicial persons appointed to fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damages arising from the performance of their delegated functions.
Id. at 246. Similarly, in Johnson v. Foti, 583 So.2d 1210 (La.App. 4th Cir.1991), this court held that the action of a judge's minute clerk in wrongfully recording a criminal's sentence as six months rather than sixty days was a judicial function entitled to immunity. We reasoned:
The doctrine of judicial immunity is designed to insulate the judiciary from liability in connection with the performance of their judicial functions. Whether an act is judicial in character does not depend on whether it is discretionary or ministerial.
Id. at 1212. Therefore, even if plaintiffs' son were "inadvertently" sent to Templeman, the judicial administrator, her employees and the state are immune from any liability for sending him there.
Accordingly, we conclude that the district court should have granted relator's motion for summary judgment as there is no genuine issue of material fact with regard to the existence of judicial immunity in this case. We therefore vacate the district court's judgment, grant relator's motion for summary judgment and dismiss with prejudice plaintiffs' case against the state.
DISTRICT COURT JUDGMENT VACATED; MOTION FOR SUMMARY JUDGMENT GRANTED.